## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AKEEM T.,[1]

     *Plaintiff*,

       v.

FRANK BISIGNANO,
Commissioner of Social Security[2]

     *Defendant*.

No. 24-cv-530-MAU

## <u>MEMORANDUM OPINION</u>

Plaintiff Akeem T. seeks Disability Insurance ("DI") and Supplemental Security Insurance ("SSI") benefits under the Social Security Act ("the Act"). He claims to have depression, anxiety, a learning disability, post-traumatic stress disorder ("PTSD"), and insomnia. ECF Nos. 7 ("AR") at 82, 287; 12 at 1. The Social Security Administration ("SSA" or "Commissioner") entered a final decision denying Plaintiff's claim on January 3, 2024. AR at 3.[3] On appeal, Plaintiff seeks reversal under 42 U.S.C. § 405(g). ECF No. 11.

Plaintiff argues that the Administrative Law Judge's ("ALJ") denial of benefits was not based on substantial evidence. Specifically, the Plaintiff argues that the ALJ erred in his assessment of Plaintiff's Residual Functional Capacity ("RFC") by not resolving alleged

---

[1] The Court has partially redacted Plaintiff's name in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Sep. 19, 2025).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for his predecessor. *See* Fed. R. Civ. P. 25(d).

[3] Citations are to the page numbers provided at the bottom of each page.

inconsistencies between his conclusions and findings in a persuasive medical opinion. ECF No. 12. Plaintiff seeks reversal of the final decision while the Commissioner seeks affirmance. ECF Nos. 11; 12; 15; 16. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Judgment of Reversal (ECF No. 11) and **GRANTS** Defendant's Motion for Judgment of Affirmance (ECF No. 15).

## BACKGROUND

### I.    The Social Security Act

In response to the Great Depression, Congress enacted the Act to support individuals unable to work, including those unable to work due to disability. *See Helvering v. Davis*, 301 U.S. 619, 640–45 (1937) (outlining the Act's general purposes); *Flemming v. Nestor*, 363 U.S. 603, 608 (1960). Under the Act, a claimant must establish they are "under a disability" to qualify for DI or SSI benefits. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(B); *see also Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) (noting that benefits exist to assist those with disabilities who are "without the ability to sustain themselves"). The Act defines disability as the "inability to engage in substantial gainful activity" because of a physical or mental impairment which will foreseeably end in death or last for at least twelve consecutive months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Accordingly, a person is disabled under the Act when their impairment is so severe that they cannot do their previous work or other jobs in the national economy. *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step test to evaluate whether a person is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the ALJ considers whether the claimant has at least one severe "medically determinable" impairment. *See id.* §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *see also id.*

§§ 404.1509, 416.909.  A severe impairment "significantly limits" a claimant's physical or mental abilities to perform basic work functions.  *Id.* §§ 404.1520(c), 416.920(c).  Third, the ALJ determines whether the claimant's impairment(s) is among those disabilities in a regulatory listing that conclusively establishes disability.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  These "Listings" are various physical and mental conditions that are presumptively severe enough to preclude gainful employment.  *See id.* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a claimant satisfies step three, they are disabled under the Act and eligible for benefits.  *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (citations omitted).

Fourth, if a claimant has not yet established a disability, the ALJ assesses the claimant's RFC and whether the claimant can perform their past work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  At step five, the ALJ considers whether the claimant can perform other jobs that exist in significant numbers in the national economy considering the claimant's age, education, work experience, and RFC.  *See* §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).  The claimant carries the burden of proof for the first four steps. *Butler*, 353 F.3d at 997.  At step five, the burden shifts to the Commissioner to demonstrate the claimant can perform other work.  *Id.*

The RFC is the most the claimant can still do at work on a regular and continuing basis despite their limitations.  *See* Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2 (July 2, 1996) (noting the RFC is based on a work schedule of eight hours a day, five days a week, or the equivalent thereof).  In formulating the RFC, the ALJ considers all the claimant's mental or physical impairments, including any related symptoms.  *Id.*  The ALJ may ask a vocational expert

to testify about whether the claimant can perform other work due to their RFC.  *See* 20 C.F.R. §§ 404.1566(e), 416.966(e).

## II.    Plaintiff's Disability Claims and Procedural History

Plaintiff was born on July 28, 1995.  AR at 251.  At the time of the administrative hearing, Plaintiff was twenty-seven years old, had graduated high school, and had attended one and a half years of college.  *Id.* at 41–42, 251.  Plaintiff has held various jobs over the years, with his last job being a sales associate at Lowe's until March 2022.  *Id.* at 43–45, 60.

Plaintiff applied for DI benefits on January 4, 2022, and SSI benefits on February 1, 2022, due to depression, anxiety, a learning disability, PTSD, and insomnia.  *Id.* at 19, 247, 287, 294. Plaintiff alleged his disability began on December 17, 2021.  *Id.* at 251.[4]  The Commissioner initially denied Plaintiff's claims on May 11, 2022, and again on reconsideration on September 8, 2022.  *Id.* at 81, 92–93, 163, 166.  Plaintiff requested an administrative hearing, which the ALJ held on May 11, 2023.  *Id.* at 37, 170.

## III.    The Administrative Hearing

The ALJ heard testimony from Plaintiff and a vocational expert.  *Id.* at 37.

### A.  Plaintiff's Testimony

Plaintiff testified about several matters in his personal life.

*Education.*  Plaintiff testified that he had individualized education plans ("IEPs") from the third grade until he graduated from high school.  *Id.* at 46, 51.  He explained that he had IEPs because he had trouble concentrating in class and experienced slow learning development.  *Id.* at 46.  After completing high school, Plaintiff attended college but left after his third semester.  *Id.* at 41–42, 48.  Plaintiff explained that he left college because the university transferred him after

---

[4]    Plaintiff later noted in his disability reports that he had chronic high blood pressure.  *See id.* at 322.

his second semester from a small campus meant to assist with his learning difficulties to main campus. *Id.* at 46–47. Plaintiff noted that his 3.0 grade point average dropped his third semester because main campus overwhelmed him. *Id.* at 42, 47–48.

*Travel*. In discussing his education, Plaintiff also noted that he took a four-week acting class in New York City in 2020. *Id.* at 42, 57–58, 433, 439. To attend class, Plaintiff would take the Megabus to New York City once a week and return to Washington, D.C. on the same day. *Id.* at 42, 57–58. Plaintiff also took multiple months-long trips to Los Angeles, California. *Id.* at 58–59. In 2017, Plaintiff stayed in Los Angeles for about six months with a family member before moving back to Washington D.C. *Id.* at 58. In 2018, Plaintiff moved to Los Angeles and lived on his own for about nine months. *Id.* at 59. Plaintiff ultimately ran out of money and moved into a homeless shelter before moving back to Washington, D.C. *Id.*

*Work History*. With respect to Plaintiff's work history, Plaintiff testified that he worked full time as an electrician in training for about a month or two in 2015. *Id.* at 43, 60. In that role, he helped electricians install or strip wiring from residential housing. *Id.* at 43. Plaintiff's employer fired Plaintiff after Plaintiff got into a confrontation with his manager. *Id.* at 44. Next, Plaintiff worked part time at a theater as an usher and ticket taker for approximately a year between 2017 and 2018. *Id.* at 44–45. Finally, from September 2021 to March 2022, Plaintiff worked part time at Lowe's as a sales associate. *Id.* at 45, 60. At Lowe's, he would talk to and assist guests, stock items, cut trees, and push carts. *Id.* at 60.

*Plaintiff's impairments*. Plaintiff also testified about his mental impairments and symptoms. *Id.* at 49-54, 572. First, Plaintiff testified that he developed PTSD from a December 2018 car accident and, as a result, had "shivers, shakes, nightmares, [and was] scared to get behind the wheel." *Id.* at 51. Plaintiff explained that the last time he got in the driver's seat, he froze and

started shivering and shaking. *Id.* Second, Plaintiff testified about his anxiety and described how when someone rushed him or he was in a fast-paced work environment, he felt overwhelmed and would zone out. *Id.* at 52. For example, when Plaintiff's counsel asked Plaintiff if he would be able to sit and make sure someone did not steal from a store, Plaintiff answered that he would have concentration issues and lose focus. *Id.* at 54. Third, Plaintiff added that he experienced periods of insomnia due to his anxiety, which occasionally disturbed his sleeping patterns and kept him up late at night. *Id.* at 52. Fourth, Plaintiff testified that he dealt with depression almost every day and that he could get "low," which made him not want to do anything or leave the house for a couple of days or weeks. *Id.* Plaintiff also testified that he had anger issues and that when things do not go his way or someone spoke to him in a certain way, he could become very angry and had to "take control of himself." *Id.* at 53. Plaintiff later noted that working full time intensified his anger issues, depression, and anxiety. *Id.* at 61.

*Treatment*. For treatment, Plaintiff stated that he took medication and had been seeing Dr. Alvaro Guzman since 2019. *Id.* at 49. Plaintiff's last session occurred in the winter before the administrative hearing, and Plaintiff had not seen Dr. Guzman after his practice closed. *Id.* at 49–50. Plaintiff testified that he had an intake appointment scheduled with a new doctor for the week following the administrative hearing. *Id.* Plaintiff added that that he and Dr. Guzman had been testing new medications and dosages. *Id.* at 53.

*Living Arrangements*. Plaintiff also testified about his living arrangements and daily tasks. Plaintiff stated that he lived with his mother and three siblings. *Id.* at 55. Plaintiff took out the trash, did the dishes, and grocery shopped for the home. *Id.* Plaintiff usually ordered groceries online and had them delivered. *Id.* Plaintiff took public transportation but felt scared from news stories "of people pulling out guns and knives." *Id.* at 55–56. Specifically, Plaintiff noted that he

did not take public transportation to the hearing because he witnessed an individual "getting very verbal" with a police officer on the metro the day before. *Id.* at 56–57. Plaintiff had a driver's license but failed the written test twice. *Id.* at 61. Plaintiff also managed his own finances and received food stamps. *Id.* at 62–63.

Finally, Plaintiff described his typical day. *Id.* at 54. Plaintiff stated that he usually woke up, checked his phone and calendar, brushed his teeth, showered, had breakfast, and attempted physical activity. *Id.* He stated that he spent most time around his family and did not see his friends often. *Id.*

### B. Vocational Expert's Testimony

Vocational expert Donna Nealon testified at the hearing. *Id.* at 64–68. The ALJ asked Nealon a series of questions based on a hypothetical individual with Plaintiff's age, education level, and no past relevant work. *Id.* The ALJ asked Nealon several questions based on the hypothetical individual's profile:

> [A]ssume this individual is limited to simple, routine tasks . . . limited to lift/carry, push/pull 50 pounds occasionally, 25 pounds frequently. Can sit for six hours in an eight-hour workday. Can frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl. Can only occasionally climb ropes, ladders and scaffolds. This individual is limited to simple, routine tasks. Can only occasionally interact with supervisors, coworkers, and the public, and can only occasionally adjust to changes in workplace settings. No other limitations.

*Id.* at 65.

Nealon stated that the hypothetical individual could work several jobs in the national economy, such as kitchen helper, hand launderer, and hospital cleaner. *Id.* at 66. Nealon clarified that these jobs required a person to only occasionally interact with the public, supervisors, and coworkers. *Id.* at 67. These jobs also generally allowed for half hour to one-hour lunch breaks and one or two ten-to-fifteen-minute breaks. *Id.*

Following a question from Plaintiff's counsel, Nealon stated that employers typically would tolerate an employee being off task 10–15% of the time but rarely would tolerate an employee being off task 20% of the time. *Id.* at 68. Nealon added that one or two absences per month for an employee without accommodations was acceptable. *Id.* Three or more absences, however, was not acceptable. *Id.*

## IV.  The ALJ's Decision

On June 29, 2023, the ALJ issued a decision finding that Plaintiff was not disabled based on the five-step analysis. *Id*. at 16; *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2021, the alleged onset date of his disability. *Id*. at 21. Second, the ALJ found that Plaintiff had the following severe impairments: 1) neurocognitive disorder; 2) affective anxiety; 3) trauma-related disorder; and 4) obesity. *Id*. at 22.

At step three, the ALJ found that Plaintiff's mental impairments did not meet or medically equal any impairment in the Listings. *Id*. at 22–23. The ALJ determined that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria of the relevant Listings because Plaintiff only had moderate mental limitations.[5] *Id.* at 22. Moreover, the ALJ found that Plaintiff's mental impairments did not satisfy the criteria for "paragraph C" because Plaintiff could sustain himself, did not require hospitalizations, and had not demonstrated any major clinical abnormalities. *Id*.

The ALJ formulated Plaintiff's RFC at step four and concluded that Plaintiff's "medically determinable" impairments could reasonably be expected to cause his alleged symptoms. *Id.* at

---

[5]     The Listings employ four functional criteria under "paragraph B" to assess severe mental impairments: 1) "understand, remember, or apply information"; 2) "interact with others"; 3) "concentrate, persist, or maintain pace"; and 4) "adapt or manage oneself." S*ee Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *7 (D.D.C. Aug. 21, 2023) (citations omitted). To satisfy "paragraph B," a claimant's severe mental impairments must either extremely limit one of these areas of mental functioning or markedly limit two of them. *Id.*

22–24; *See, e.g.,* 42 U.S.C. § 404.1521. The ALJ found that other evidence in the record contradicted Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. AR at 25. The ALJ considered the medical opinions of state agency psychological consultants Drs. Patricia Cott and Nancy Heiser, consultative examiner Dr. Allison Drewno, and Plaintiff's treating physician Dr. Guzman. *Id*. at 29–30.

The ALJ found that Plaintiff's stated symptoms were more severe than the medical evidence in the record and that his mental impairments imposed, at most, moderate limitations. *Id*. at 27–28. For example, the ALJ noted that there was no evidence in the record reflecting that Plaintiff had gone to the emergency room or hospital because of his mental health. *Id.* at 26. Moreover, the ALJ noted that Plaintiff had not reported experiencing any hallucinations, delusions, paranoia, obsessive behavior, impulse control issues, or suicidal or homicidal thoughts. *Id.*

The ALJ found that Plaintiff's medical records supported the ALJ's conclusion. *Id*. at 26, 28. The ALJ highlighted Dr. Drewno's June 2019 consultative examination report, in which Dr. Drewno stated that, although Plaintiff had mildly impaired concentration, memory, and attention skills, Plaintiff's intellectual functioning was otherwise within normal bounds. *Id*. at 26. The ALJ added that, despite Plaintiff receiving an extremely low intelligence quotient ("IQ") score at the examination, Dr. Drewno cautioned that Plaintiff's IQ score may underestimate Plaintiff's true abilities "due to possible suboptimal effort." *Id.* at 26, 378. Dr. Drewno observed that Plaintiff responded inconsistently, answered questions with little deliberation, gave up easily, and took long periods of time to respond to tests. *Id.* at 26, 378. The ALJ also noted that Plaintiff's July 2022 initial psychiatric evaluation documented largely normal mental health conditions, including in terms of concentration, memory, socialization, sleep, workplace functioning, as well as average and above intelligence. *Id.* at 26, 525. The ALJ chronicled how this evaluation was generally

consistent with Plaintiff's treatment records between January and August 2022, as well as his records that predated his disability onset date.  *Id*. at 26, 28, 384–441, 442–521, 532–573.

The ALJ also found that Plaintiff's past activities and behavior showed that Plaintiff had no more than moderate mental limitations.  The ALJ noted that Plaintiff had obtained a high school diploma, attended a year and a half of college in person, and passed a driver's test.  *Id*. at 27.  The ALJ also pointed to Plaintiff's testimony about his daily activities, his various part-time jobs, moving to Los Angeles by himself, taking a public bus alone to New York for his acting class, and shopping online.  *Id.*  Moreover, the ALJ determined that Plaintiff's history of limited and routine treatment and the lack of significant findings in his mental health examinations further supported the ALJ's conclusion.  *Id*. at 27, 29–30.

In weighing Plaintiff's medical records with the rest of the Administrative Record, the ALJ found the opinions of Drs. Cott and Heiser persuasive.  The ALJ summarized Dr. Cott's opinion:

> On initial review, the State agency psychological consultant opined that the claimant is able to recall [short] and simple instructions, but would have difficulty with recalling and understanding complex or detailed information; that the claimant is capable of performing familiar and/or routine procedures, as well as maintain concentration and attention for two-hour periods in order to complete an eight-hour day; he could interact appropriately with supervisors and coworkers, but would be less comfortable in situations requiring frequent social contact with the public and therefore, is able to interact with the public only for brief periods or infrequently; is able to complete a normal workweek and perform at a generally consistent pace with others with only minimal need for accommodations on an infrequent basis; and that the claimant may need assistance in adapting to change, unless infrequent or implemented gradually.

*Id*. at 29 (citations to exhibits omitted); 71–92.  Similarly, Dr. Heiser opined that Plaintiff could understand, remember, and sustain attention to carry out short and simple instructions, interact with others to perform routine tasks with occasional interaction with the public, and be aware of hazards and travel.  *Id*. at 29; 93–114.  The ALJ found both opinions persuasive because they were

consistent with Plaintiff's other medical records, his limited course of treatment, and his ability to engage in daily activities. *Id*. at 29–30.

The ALJ also found Dr. Drewno's opinion somewhat persuasive. *Id*. at 30. Dr. Drewno opined that Plaintiff has moderate limitations in understanding, remembering, or applying complex instructions. *Id*. She concluded that Plaintiff had no limitations with following an ordinary routine, managing his personal hygiene, and maintaining awareness of normal hazards. *Id*. The ALJ observed that these findings were generally consistent with Plaintiff's low IQ score and treatment records. *Id*. The ALJ highlighted that, although Plaintiff's score and records showed that Plaintiff had somewhat limited cognitive abilities, the record otherwise demonstrated that Plaintiff had mildly impaired attention, concentration, and memory skills, and otherwise normal limitations. *Id*.

The ALJ determined that Dr. Guzman's opinion, on the other hand, was not persuasive. *Id*. Dr. Guzman opined that Plaintiff had "marked" limitations in 1) all functional areas and "extreme" limitations in maintaining attention and concentration for extended periods; 2) completing a normal workday and workweek without interruptions from psychological symptoms; and 3) performing at a consistent pace without taking an unreasonable number and length of rest periods. *Id*. The ALJ concluded that Dr. Guzman's own treatment records did not support this opinion. *Id*. The ALJ observed that Dr. Guzman documented normal mental status examination findings in terms of speech, eye contact, thought process and content, insight and judgment. *Id*. Dr. Guzman also described in his notes how Plaintiff had held many part-time jobs, traveled to New York by himself, drove, and engaged in other activities, all of which were inconsistent with a finding of marked or extreme limitation. *Id*. Moreover, the ALJ found that Dr. Guzman's

opinion was not consistent with other medical records and examinations, which documented that Plaintiff had low IQ scores but did not otherwise possess any mental health abnormalities. *Id.*

Based on these assessments, the ALJ determined that Plaintiff had the RFC to perform medium work with the following limitations:

> [Plaintiff] can lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently; sit for six hours in and eight-hour workday and stand and walk for six hours in an eight-hour workday; frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs and occasional climbing of ropes, ladders, or scaffolds. The [Plaintiff] is limited to simple, routine tasks and can only occasionally adjust to changes in workplace settings. The [Plaintiff] can only occasionally interact with supervisors, co-workers, and the public.

*Id.* at 24–25.

At step five, the ALJ determined that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could still perform a variety of jobs. *Id.* at 31. As outlined above, the ALJ and vocational expert had a series of exchanges concerning whether there were jobs in the national economy for a hypothetical individual with the same age, education, professional history, and RFC as Plaintiff. *Id.*; *see supra* Background Section III.B. In line with the vocational expert's hearing testimony, the ALJ determined that Plaintiff could undertake unskilled jobs such as a kitchen helper, hospital cleaner, and hand launderer. AR at 31. Thus, the ALJ determined that Plaintiff was not "under a disability" for purposes of the Act during the relevant period and, accordingly, denied his request for DI and SSI benefits. *Id.* at 32. The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on January 3, 2024. *Id.* at 3–6.

## **LEGAL STANDARD**

Federal district courts have jurisdiction to review final decisions of the Commissioner. 42 U.S.C. §§ 405(g); 1383(c)(3). The reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record as a whole and the correct application of the relevant

legal standards.  *Butler*, 353 F.3d at 999 (citation omitted).  Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence.  *Id.* (citation omitted).  This standard requires "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified).  This is a low bar. *See Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20 F.4th 1, 7 (D.C. Cir. 2021)).  Moreover, the Court must give deference to the ALJ as the fact-finder.  *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (citation omitted).

Despite the deference a reviewing court must give to the ALJ, this standard of review "calls for careful scrutiny of the entire record" to determine whether the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits."  *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (citation modified).  The ALJ's decision must include findings and conclusions on all material issues of fact, law, or discretion as well as the ALJ's reasons for those findings and conclusions.  5 U.S.C. § 557(c)(3)(A).  In reaching a decision, an ALJ cannot simply disregard evidence that does not support the ALJ's conclusions.  *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009) (citation omitted).

It is the plaintiff's burden to show that the ALJ's decision was not based on substantial evidence or that the ALJ applied an incorrect legal standard.  *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (citation omitted); *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Only a prejudicial error "that impacted the outcome of the proceeding" warrants reversal. *Wilson v. Comm'r of Soc. Sec.*, No. 24-5073, 2025 WL 2047967, at *3 (D.C. Cir. July 22, 2025) (per curiam) (unpublished) (citing *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021)).

## DISCUSSION

Plaintiff argues that the ALJ's decision was not based on substantial evidence because the ALJ failed to resolve two inconsistencies in formulating his RFC.  ECF Nos. 12 at 9–15; 17 1–6.  Although Plaintiff's arguments are difficult to decipher, Plaintiff apparently claims that the ALJ's RFC contradicts Dr. Cott's persuasive medical findings[6] that: 1) Plaintiff required short and simple instructions; and 2) Plaintiff required accommodations.  *Id.*  The Commissioner responds that the ALJ's RFC is consistent with Dr. Cott's opinion.  ECF No. 16 at 8–15.  The Commissioner is correct.

### I.    Functional Analysis

At step four, the ALJ assesses the claimant's RFC, which bears on whether Plaintiff can perform previous work (step four) or other jobs (step five).  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).    The RFC determination requires a "function-by-function" inquiry based on all the relevant evidence of a claimant's ability to work.  SSR 96–8p, 1996 WL 374184, at *3.  This inquiry includes an assessment of a plaintiff's exertional and nonexertional capacities, including their mental abilities.  *See id.* at *5–6 (providing examples of work-related mental functions, such as carrying out instructions and responding appropriately to supervisors).   In formulating the RFC and assessing the claimant's capacities, the ALJ must consider all of claimant's severe and non-severe impairments.  SSR 96–8p, 1996 WL 374184, at *5.  If the claimant has at least one severe impairment or combination of impairments, the ALJ must consider how the impairments impact a claimant's physical and mental capacities in the workplace.  *See Cheryl S. v. Kijakazi*, No. 18-cv-1379, 2022 WL 21758804, at *10–11 (D.D.C.

---

[6]    Plaintiff also contends that, in formulating the RFC, the ALJ contradicted Dr. Heiser's persuasive medical opinion because Dr. Heiser affirmed Dr. Cott's findings.  ECF No. 12 at 11.  Plaintiff, however, relies exclusively on Dr. Cott's specific findings and opinion as the basis for his argument.

May 4, 2022); *report and recommendation adopted*, 2022 WL 21758803 (D.D.C. May 20, 2022); *see also* 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2).

The function-by-function analysis requires the ALJ to provide a narrative discussion that identifies the evidence that supports each of the ALJ's conclusions. *Butler*, 353 F.3d at 1000 (citation omitted); SSR 96–8p, 1996 WL 374184, at *7. Courts in this District have used various approaches to evaluate this requirement. *See Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (comparing cases); *Charles v. Astrue*, 854 F. Supp. 2d 22, 29–30 (D.D.C. 2012) (same). Specifically, courts are split on whether an ALJ must evaluate and articulate their conclusions on each of the plaintiff's work-related functions in writing. *Compare Lane-Rauth*, 437 F. Supp. 2d at 67 (requiring this analysis for a plaintiff's exertional capacity), *with Kim M. v. Kijakazi*, No. 20-cv-2072, 2021 WL 4033060, at *7 (D.D.C. Sept. 3, 2021) (collecting cases and finding such an analysis is unnecessary). Even if a court does not require a written function-by-function articulation, the ALJ must still provide a "thorough narrative discussion of Plaintiff's limitations" and build a "logical bridge" between relevant evidence and the ALJ's conclusions. *Contreras*, 239 F. Supp. 3d at 207; *see also Butler*, 353 F.3d at 1000; *Lane-Rauth*, 437 F. Supp. 2d at 67. Relevant evidence includes medical records, source opinions, and individual's subjective complaints about their condition. *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

Although an ALJ need not discuss every piece of record evidence, they must provide a sufficient basis for this Court to understand their reasoning when viewing the decision as a whole. *Colter v. Kijakazi*, No. 20-cv-0632, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022); *Said S. v. O'Malley*, No. 22-cv-362, 2024 WL 2152737, at *10 (D.D.C. May 14, 2024). Nevertheless, the ALJ cannot "cherry-pick facts" to support their finding of non-disability while ignoring evidence that reflects otherwise. *Said S.*, 2024 WL 2152737, at *10 (citation omitted). An ALJ must at

least discuss the evidence that contradicts the Commissioner's position.  *See Lane-Rauth*, 437 F. Supp. 2d at 67 (citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  If the ALJ meets this standard, the Court must sustain the ALJ's findings even if the Court's independent analysis of the evidence may differ.  *Ali v. Colvin*, 236 F. Supp. 3d 86, 90 (D.D.C. 2017) (citation modified).  That said, courts will only consider the grounds upon which the ALJ relies and will not consider any post hoc rationale the Commissioner offers on appeal.  *See, e.g.*, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017).

Here, the ALJ determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that Plaintiff could sit, stand, or walk for six hours in an eight-hour workday; occasionally lift, carry, push, and pull fifty pounds and twenty-five pounds frequently; frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and occasionally climb ropes, ladders, or scaffolds.  AR at 24–25.  The ALJ limited Plaintiff to simple, routine tasks and noted that Plaintiff could only adjust to changes in the workplace setting or interact with supervisors, co-workers, and the public occasionally.  *Id.* at 25.  As explained below, substantial evidence supports the RFC assessment because the RFC and Dr. Cott's medical opinion do not contradict each other.

## II.    The RFC is Consistent with Dr. Cott's Opinion Concerning Plaintiff's Limitations with Instructions.

Plaintiff's argument hinges on an alleged inconsistency between the RFC and Dr. Cott's opinion as to Plaintiff's abilities with instructions.  ECF No. 12 at 11–12.  Specifically, Plaintiff contends that the ALJ failed to explain why the ALJ limited Plaintiff to simple, routine tasks when Dr. Cott opined that Plaintiff could only work with "short and simple instructions" due to Plaintiff's difficulty understanding and recalling "complex or detailed instructions."  *Id.* According to Plaintiff, the alleged unresolved conflict between the ALJ's RFC determination and

Dr. Cott's persuasive medical opinion means "the ALJ's decision is void of the requisite explanation as to how the evidence supports his conclusion about Plaintiff's RFC." *Id.* at 12. In response, the Commissioner argues that Plaintiff is making a semantic, rather than substantive, distinction. ECF No. 16 at 13. The Commissioner contends that an RFC "need not parrot any opinion word-for-word." *Id.* By limiting Plaintiff to simple, routine tasks, the Commissioner argues that the ALJ captured the essence of Dr. Cott's opinion. *Id.* The Commissioner is correct.

In formulating the RFC, an ALJ must consider medical opinions in the record. *Saunders*, 6 F.4th at 4 (citation omitted). As noted above, an ALJ must build a logical bridge between the evidence and the ALJ's conclusions. *Contreras*, 239 F. Supp. 3d at 207. An ALJ need not expressly incorporate a persuasive medical opinion's restrictions into the RFC to satisfy this requirement. *Patricia T. v. Kijakazi*, No. 21-cv-1028, 2022 WL 3583634, at *10 (D.D.C. Aug. 22, 2022) (citation omitted). Instead, an ALJ may implicitly account for the opinion by restricting a claimant to a particular type of work. *Id.* (collecting cases). As the Commissioner correctly points out, an ALJ need only "sufficiently capture the essence" of a persuasive opinion, not parrot its findings verbatim. *Mitchell v. Berryhill*, 241 F. Supp. 3d 161, 172 (D.D.C. 2017) (citation modified); ECF No. 16 at 13. Even if he finds an opinion persuasive, the ALJ need not accept every word so long as the ALJ provides a sufficient basis for the Court to understand the ALJ's implicit or explicit variation from the opinion. *See Patricia T.*, 2022 WL 3583634, at *11 (citations omitted); *Tiana O.*, 2023 WL 5348747, at *6 n.10 (citations omitted).

There is no contradiction between Dr. Cott and the ALJ's conclusions as to Plaintiff's abilities with instructions. Contrary to Plaintiff's characterization, Dr. Cott did not restrict Plaintiff to only work with short and simple instructions. Dr. Cott opined that Plaintiff was "able to recall short and simple instructions but would have difficulty with recalling and understanding complex

or detailed information." AR at 75–76, 86–87. Dr. Cott concluded that Plaintiff was "not significantly limited" in his ability to carry out short and simple instructions and was only "moderately limited" in his ability to carry out detailed instructions. *Id.* at 75–76, 86–87. Moderate limitations in understanding, remembering, and carrying out detailed instructions do not limit a plaintiff to only performing tasks with simple instructions. *See, e.g.*, *Blackmon v. Astrue*, 719 F. Supp. 2d 80, 98 (D.D.C. 2010) (concluding that the plaintiff had failed to show he was limited to only simple instructions when the findings of a medical opinion only noted moderate limitations with detailed instructions). Accordingly, there is no unexplained inconsistency between the RFC and Dr. Cott's findings.

Further, an RFC limiting a plaintiff to simple, routine tasks, paired with vocational expert testimony identifying only unskilled work as suitable, is consistent with a plaintiff's limitations to understanding, remembering, and carrying out only short and simple instructions. *See Devylle C. v. Kijakazi*, No. 22-cv-1061, 2023 WL 4864600, at *13 (D.D.C. July 31, 2023) (collecting cases and finding these restrictions account for a plaintiff's moderate limitations); *Kayra G. v. Kijakazi*, No. 20-cv-10897, 2023 WL 2674769, at *10 (D.N.J. Mar. 29, 2023) (holding that limiting a plaintiff to only simple, routine tasks appropriately accounted for the state agency expert's restrictions of short, simple instructions); *see also* 20 C.F.R. §§ 404.1568(a), 416.968(a) ("[U]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). The ALJ restricted Plaintiff to simple, routine tasks in the RFC, and Ms. Nealon's testimony only concerned unskilled work. AR at 25, 31. Accordingly, even accepting Plaintiff's characterization of Dr. Cott's opinion as restricting him solely to jobs requiring short and simple instructions, the ALJ did not err in formulating the RFC.

Plaintiff also claims that the RFC and Dr. Cott's opinion conflict because Dr. Cott's findings "resemble" the definition of reasoning level one work despite the ALJ concluding that Plaintiff could perform jobs which require a reasoning level of two. *Id.* at 12–13. The Dictionary of Occupational Titles Appendix C defines reasoning level one work as requiring a person to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," whereas reasoning level two work requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles App. C*, pt. III (4th ed. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (last visited Sep. 19, 2025).

In making this argument, Plaintiff relies heavily on *Ebony B. v. O'Malley*, 749 F. Supp. 3d 96 (D.D.C. 2024). In *Ebony B.*, this Court found that the ALJ erred when the ALJ failed to address a conflict between his conclusion that a plaintiff could perform reasoning level two work and the findings of a persuasive medical opinion that plaintiff had moderate difficulties in understanding, remembering, and carrying out detailed instructions. 749 F. Supp. 3d at 118. The ALJ in that case, however, explicitly noted the plaintiff's ability to perform reasoning level two work and formulated an RFC that included reasoning level two language, such as that the plaintiff could carry "out uninvolved written or oral instructions." *Id.* at 100, 119. Here, Plaintiff does not point to anywhere in this record where the ALJ attributed a specific reasoning level to Plaintiff or included reasoning level two language in the RFC. Thus, *Ebony B.* is inapposite. The ALJ need not explain a finding the ALJ did not make.[7]

---

[7]    Plaintiff states he is not arguing that the ALJ erred in relying on the vocational expert's testimony as to the work Plaintiff could perform in the national economy given his RFC. ECF No. 17 at 3; *see Tiana O.*, 2023 WL 5348747, at *13 (rejecting argument that limiting a plaintiff to

Moreover, the "key error" in *Ebony B.* was that the ALJ failed to explain how he reconciled his conclusion regarding the plaintiff's reasoning level with the persuasive medical opinion's findings on the plaintiff's moderate difficulties with instructions. *Id.* at 119. Here, the ALJ recognized Plaintiff's moderate limitations in following instructions and cited Dr. Cott's opinion. AR at 22–24. The ALJ explained why the evidence did not support greater limitations on Plaintiff's ability to work, citing Plaintiff's education, ability to pass a driving test, and Plaintiff's medical records. *Id.* at 27. The ALJ also explicitly stated that he accounted for Plaintiff's concentration issues by limiting him to simple tasks and noted that Plaintiff's treatment records documented only mild attention and concentration impairments. *Id.* at 27, 29. Specifically, the ALJ highlighted Dr. Heiser's persuasive medical opinion that Plaintiff could "sustain attention and pace to carry out simple instructions on a regular basis to complete a normal workday and workweek." *Id.* at 29, 100.

### III.    The ALJ's RFC is Consistent with Dr. Cott's Opinion Concerning Plaintiff's Need for Accommodation.

Plaintiff next claims that the ALJ failed to address a contradiction between the RFC and Dr. Cott's opinion that Plaintiff would require accommodations to complete a normal work week and perform at a consistent pace.[8] ECF No. 12 at 13. In making this argument, Plaintiff relies

---

simple, routine, and repetitive tasks precludes a plaintiff from performing unskilled work requiring a reasoning level of two); *Carpenter v. Colvin*, No. 13-cv-637, 2016 WL 946975, at *8 n.8 (D.D.C. Feb. 24, 2016) (collecting cases and noting that a conflict does not exist between an RFC and a vocational expert's testimony when the ALJ does not limit the expert to a particular reasoning level), *report and recommendation adopted*, 2016 WL 953216 (D.D.C. Mar. 14, 2016).

[8]    Plaintiff also argues that Dr. Cott's finding that the Plaintiff "requires accommodations" supports Dr. Guzman's opinion that "he is extremely limited in his ability to perform at a consistent pace." ECF No. 12 at 13. Defendant interprets this assertion to mean the Plaintiff argued that the ALJ erred in finding Dr. Guzman's opinion inconsistent with the record. ECF No. 16 at 14.    It does not appear that the Plaintiff claims that the ALJ erred in his assessment of Dr. Guzman's opinion. Nonetheless, by not having responded to the Commissioner's arguments that Dr. Cott found "no more than moderate limitations" as compared to Dr. Guzman who found "numerous extreme and marked limitations," Plaintiff waives them. *See* ECF No. 16 at 14; *see also Queen v.*

heavily on *Caitlin O. v. Kijakazi*, No. 17-cv-1939, 2023 WL 4744068 (D.D.C. July 25, 2023). ECF Nos. 12 at 14; 17 at 3–4.  In that case, the court held that an ALJ properly considered medical opinions that stated plaintiff would require accommodations to work and reports that provided examples of reasonable accommodations.  *Caitlin O.*, 2023 WL 4744068, at *11–12.  Given Dr. Cott's opinion, Plaintiff claims that the ALJ had an obligation to consider what Plaintiff could do without accommodations or "independently."  ECF No. 12 at 13–14.

The Commissioner argues that Plaintiff's reliance on *Caitlin O.* is misplaced.  ECF No. 16 at 15.  The Commissioner contends that the ALJ did not err because, in crafting the RFC, he cited Dr. Cott's conclusions and considered them, along with the other evidence, to account for Plaintiff's limitations.  ECF No. 16 at 14.  The Commissioner is correct in both respects.

### A.  Plaintiff Fails to Show What Accommodations the ALJ Did Not Consider.

In *Caitlin O.*, the court reviewed whether the ALJ must expressly consider a medical opinion that a plaintiff is unable to perform certain types of work without reasonable accommodations.  2023 WL 4744068, at *11.  There, the plaintiff claimed that the ALJ had failed to consider: 1) medical opinions that stated that the plaintiff required a *specific* accommodation for her physical impairment; and 2) a list of example accommodations in state agency medical reports.  *Id*. at *12.  The court in *Caitlin O.* concluded that "a medical opinion stating that a claimant requires reasonable accommodations to work is probative evidence in a disability proceeding."  *Id.*  The court still found that the ALJ properly considered the plaintiff's required accommodation when the ALJ: 1) explicitly weighed the medical opinions' findings that plaintiff

---

*Schultz*, 310 F.R.D. 10, 25  (D.D.C. 2015) ("[B]y failing to respond to the defendant's opposing arguments in his reply, the plaintiff has abandoned these arguments."), *aff'd*, 671 F. App'x 812 (D.C. Cir. 2016).

needed a specific accommodation against other evidence in the record; and 2) addressed the medical reports containing the list of accommodation examples. *Id.*

Unlike in *Caitlin O.* where the medical opinion ordered a specific accommodation, Dr. Cott did not suggest that Plaintiff required any specific accommodation or even provide any examples of reasonable accommodations in this case. *See* AR at 76; *Cf. Caitlin O.*, 2023 WL 4744068, at *12. Instead, Dr. Cott opined that Plaintiff was "able to compete a normal work week and perform at a generally consistent pace with others, with only minimal need for accommodations on an infrequent basis." AR at 77. Plaintiff does not state how the ALJ failed to consider Dr. Cott's opinion or what accommodations or other limitations the ALJ should have included in the RFC. *Cf. Caitlin O.*, 2023 WL 4744068, at *12. Even at this stage of the proceedings, Plaintiff does not offer any *specific* accommodations or *particularized* modifications to the RFC that the ALJ should have made. Nonetheless, Plaintiff has still not shown how the ALJ's RFC conflicts with Dr. Cott's opinion. *See Settles*, 121 F. Supp. 3d at 169 (noting that it is the plaintiff's burden to show error).

### B. Plaintiff Fails to Show that the ALJ Did Not Consider Plaintiff's Abilities to Function Independently.

Plaintiff contends that the ALJ erred in formulating the RFC by not considering the Plaintiff's ability to function independently pursuant to 20 C.F.R. 404.1520a(c)(2) and 416.920a(c)(2). *See* ECF No. 12 at 13. Specifically, Plaintiff appears to suggest that because Dr. Cott's medical opinion stated Plaintiff had a "minimal need for accommodations on an infrequent basis," Plaintiff could not function independently, and the ALJ must find him disabled. AR at 77.

It is the plaintiff's burden to show that the ALJ's decision was not based on substantial evidence or that the ALJ applied an incorrect legal standard. *Settles*, 121 F. Supp. 3d at 169. First, Plaintiff cites no case law that instructs an ALJ to find an individual *per se* disabled if they require an accommodation. Second, this Court already determined that Dr. Cott never suggested that

Plaintiff required any specific accommodation. *See supra* Analysis Section III.A; AR at 76. Dr. Cott found that Plaintiff had at most moderate limitations in mental functioning. *Id.* at 77.

Third, the ALJ accounted for Plaintiff's moderate mental limitations by including several restrictions in his RFC so that Plaintiff could still fairly function on an independent basis in the workplace. AR at 25, 27. Ultimately, the Plaintiff has not met his burden to show the ALJ did not adequately consider Plaintiff's abilities to function independently.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal (ECF No. 11) is **DENIED**, and Defendant's Motion for Judgment of Affirmance (ECF No. 15) is **GRANTED**. The Court will issue a separate Order.

**SO ORDERED**.


Date: September 19, 2025

_____
        MOXILA A. UPADHYAYA
        UNITED STATES MAGISTRATE JUDGE